| | |
|---|---|
| CRYSTAL HENLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| KANSAS CITY, MISSOURI BOARD ) | Case No. 4:10-cv-01009 |
| OF POLICE COMMISSIONERS ) | |
| (Patrick McInerney, Alvin Brooks, ) | |
| Lisa Pelofsky, Angela Wasson-Hunt, and ) | |
| Mayor Mark Funkhouser, in their official ) | |
| Capacities,) ) | |
| ) | |
| And ) | |
| ) | |
| Sgt. Bill Brown ) | |
| (In his Individual & Official Capacity) ) | |
| ) | |
| And ) | |
| ) | |
| Officer Michael Throckmorton ) | |
| (In his Individual & Official Capacity) ) | |
| ) | |
| And ) | |
| ) | |
| Officer Dwight Parker ) | |
| (In his Individual & Official Capacity) ) | |
| ) | |
| And ) | |
| ) | |
| Officer "John Connor"an Alias Name ) | |
| For an Instructor at the Police Academy ) | |
| (In his Individual & Official Capacity) ) | |
| ) | |
| And ) | |
| ) | |
| Chief James Corwin, KCPD ) | |
| (In his Official Capacity) ) | |
| ) | |
| Defendants. ) | |

# 1st AMENDED PETITION
## ALLEGATIONS COMMON TO ALL COUNTS

COMES NOW Plaintiff, by and through her counsel, and for her petition against Defendants states and alleges as follows:

1. Plaintiff resides at a location in, Independence, MO 64055 and has resided in the Western District of Missouri for all times relevant to this petition. Plaintiff also lives in the Greater Kansas City Metropolitan area, all within the Western District of Missouri.

2. The Board of Police commissioners of Kansas City, Missouri is a state agency that can be sued only by serving and naming the individual members of the Board of Police Commissioners of Kansas City, Missouri in their official capacity. The Board of Police Commissioners of Kansas City, Missouri (herein after "the Board") is an agency created and existing in accordance with the laws of the State of Missouri, specifically Section 84.350 et seq., RSMo 2007.

3. Defendants Patrick McInerney, Alvin Brooks, Angela Wasson-Hunt, Lisa Pelofsky and Mayor Mark Funkhouser are duly appointed and acting members of the Board, and are sued only in their official capacities as officers and members of the Board.

4. Pursuant to Section 84.420 RSMo, the Board has the duty and responsibility to preserve the public peace, prevent crime and arrest offenders, and enforce all laws and ordinances within the corporate limits of the City of Kansas City, Missouri.

5. The Board has exclusive management and control of its policies and practices regarding the methods and manner of response to calls for officer assistance, training for all officers and recruits, and is responsible for insuring that members of the Kansas City, Missouri Police Department conduct themselves in a lawful manner in undertaking their duties.

6. Each and all of the acts of the Defendant Board and Defendant officers, Bill Brown, Officer Throckmorton, Officer Parker, Officer John Connor, Sgt. Conroy and the Chief of Police of Kansas City, Missouri were made under the color and pretense of the statutes of the State of Missouri and the regulations, practices, customs, training and usages of the Kansas City, Missouri Police Department. The Chief of Police is responsible for implementing the policies of the Board and for ensuring that the standards and practices of the Board are followed and adopted.

7. Sometime in May 2005, Plaintiff entered the Police Academy in order to become trained to be a officer for the Kansas City, Missouri Police Department. Plaintiff understands that the Police Academy is staffed by and run by members of the Kansas City, Missouri Police Department. The Police Academy is run in Kansas City, Jackson County, Missouri and is designed and built to provide law enforcement training for all members who wanted to become police officers.

8. In May 2005, a member of the HR Staff informed the incoming class of students, that they had to sign a contract and agree to pay back the police department a certain sum of money for the training if the persons enrolled in the academy quit after certification and before three (3) years. Additionally Sgt. Brown informed the class that they had no rights, that if they got her they would be dropped; or they challenged his authority that they would be dropped.

9. Plaintiff alleges that she was targeted for discrimination because she was a female in a class that was predominantly male and was almost exclusively trained by males. Throughout her entire training, through the end of October, 2005, Plaintiff was treated differently and suffered humiliation, loss, physical injury, medical complications, and demeaning and intimidating conduct.

3

10. Late May/early June 2005, Defendant Throckmorton made Plaintiff do a tactical recovery for 35-40 minutes on one side which resulted in a severely torn quad muscle. The injury caused Plaintiff to suffer leg convulsions, and a large knot on her leg that lasted for approximately three days. No other male officers were required to perform the test in the same training fashion.

11. During the month of June 2005, Defendant Parker spoke with the female cadets including Plaintiff and another female cadet about the size of their breasts. Parker told Plaintiff that her button down dress shirt would pucker and that an individual could see Plaintiff's bra. As a result of the puckering condition of her shirt, Parker told Plaintiff that it would hard to take females seriously as cops and that the bra would be a distraction

12. During Late June 2005, Defendant Parker told Plaintiff that he had decided that he would not allow Plaintiff to graduate and that he had taken a bet to see how fast "they" could get ride of her. While Parker complimented Plaintiff on her work thusfar in the academy, he indicated he would just try harder and assure that she would not graduate. Parker suggested that she looked like she should be some rich Johnson county man's wife; rather than a police officer.

13. Mid July 2005, Defendant Throckmorton wrote up Plaintiff for not jumping high enough over a crack in the gym mat. During the exercise, Defendant Throckmorton was intently watching Plaintiffs' breasts as she jumped. The command to jump ran the entire session of the class and he continued watching Plaintiff at a very close distance. Other male members of the class told Plaintiff later that they could not have jumped as high as Plaintiff did.

14. In August, Defendant Sgt. Brown was at the shooting range to rant, rave, and intimidate Plaintiff. The screaming by Brown was throughout the entire shotgun obstacle course.

4

The ranting was so bad that Defendant Sgt. Conroy stepped out of his office and had Defendant Brown go to Conroy's office.

15. In different training exercises, Plaintiff's experience was that she would get the blame for a training exercise when it may have been her male partner's fault. The training experience was made much worse by Defendant Brown when he informed Plaintiff's partners, like EO Grigsby, to work against Plaintiff on the individual calls. In another event, Plaintiff was ridiculed and screamed at when she made an extra turn while driving; by comparison the instructor, a female officer named Nicole Templeton, was encouraging for the male officers who could not even recognize their landmarks. In another training exercise, Plaintiff was screamed at by Defendant Throckmorton because she didn't jump over a 2 foot square box with 4x4 foam push up blocks.

16. In mid-July 2005 the Plaintiff was kicked in the back while she was doing pushups by Defendant Throckmorton. No other male officers were kicked by Defendant Throckmorton while complaining about bad posture.

17. In mid August, 2005, Defendant Throckmorton was screaming at Plaintiff for being a lazy quitter in front of the class. This was as a result of not being the very last person in the class to hold her leaning wall squat. Throckmorton did not scream at any of the other 30 males who quit the exercise before she did.

18. In Late October 2005, Plaintiff along with Defendant Throckmorton and Defendant Jackson discussed how much easier it was for women with large breasts to do pushups. Because Defendant Throckmorton was not satisfied with Plaintiff's effort, Throckmorton pulled her by her hair from a sit-up position because her hands were not clasped

5

tight enough around her head. Throckmorton did this to Plaintiff even though he had another officer, Officer Lovelady, assigned to monitor her progress was standing right behind her.

19. In early September 2005, Defendant Throckmorton made Plaintiff close her eyes in a PT/DT class. When her eyes were closed, Throckmorton administered a brachial hit that dislocated her shoulder and had to be put back in the socket by a chiropractor after the class that day. Because she did not show any pain, Throckmorton threatened to hit her again. Other students, however, warned Throckmorton to not hit her again.

20. In October 7, 2005 Plaintiff was sent home for having a raspy voice by Defendant Sgt. Brown. Brown then required some sort of proof that she was sick on the following day. As a result of the treatment, Plaintiff was written up by both Brown and Parker for staying home sick. The next day Defendant Throckmorton called Plaintiff a chicken in front of the class.

21. On October 17, 2005, when Plaintiff dropped another classmate off to attend class, Defendant Parker instructed another officer to lock the gun cabinet early and thus prevent Plaintiff from following the procedure. When instructed by Defendant Throckmorton to contact Defendant Brown, Brown immediately began screaming that Plaintiff had a loaded weapon and had gone crazy. This screaming was in front of another incoming class which caused Plaintiff embarrassment and humiliation.

22. In Late October, Defendant Throckmorton, as an alleged part of training, elected to spray pepper spray in Plaintiff's faced. Throckmorton used a new can so that it would have a higher pressure CO stream. The pressure was so high that when Throckmorton got close, it opened her right eye and damaged the eye. Plaintiff left the exercise and went to the locker room to shower off. As she and another female officer came out of the showers, Defendant Brown stormed into the room and left the door open. When he was in the locker room he saw Plaintiff

6

and another officer naked. Brown left the door open so that other male officers could see them as well. Rather than correct the problem, Brown merely stared at Plaintiff. Plaintiff complained about the pain to Defendant Brown, Defendant Parker and officer Pallet. When Plaintiff went home she then went to the emergency room.

23. In October 2005, Plaintiff participated in a training exercise to apply a type of choke hold to restrain a party. Plaintiff was purposely chosen so that the "fake" party could then simply attack her. Luckily, the fake party was the person who was restrained by Plaintiff. When the party, presumably the officer who played the role of the attacker, was unable to break the hold, Plaintiff was told applying. After releasing the hold, the other party then came up from behind and physically assaulted Plaintiff. The attack by this officer, possibly "John Conner" required 4 officers (Sgt. Conroy, Throckmorton, Jackson and Huth) to pull him off.

24. Plaintiff has additional examples of the hostility that she endured. Plaintiff attempted to report the harassment and abuse but command staff did not listen. Plaintiff believes several members of the command staff of the Police Department of Kansas City, Missouri were aware of the conduct of the instructors and took no action.

25. Plaintiff continued to try her hardest to complete the academy. On November 8, 2005, Defendants Parker and Defendant Brown provided a memorandum of some kind explaining why Plaintiff should fail in the academy.

26. Plaintiff ultimately was forced to leave the academy and not be a Kansas City Missouri Police Officer. Plaintiff suffered psychological and medical problems and complications from the harassment, and physical violence that was visited upon her as a result of the conduct at the Police Academy.

## COUNT I: EXCESSIVE FORCE COGNIZABLE UNDER U.S.C. SECTION 1983 AGAINST DEFENDANT JOHN CONNER

27. Plaintiff incorporates by reference as though fully set out herein paragraphs 1 through 26.

28. As a result of the training exercise, Plaintiff was unfairly and unjustifiably attacked by the officer holding himself out as John Conner.

29. As a result of the attack by Defendant John Conner, committed under color of law, Plaintiff suffered grievous bodily harm and was deprived of her right to be secure from unreasonable force in a training exercise all in violation of the 4th and 14th Amendments of the United States Constitution and 42 U.S.C. Section 1983.

30. As a direct and proximate result of the unreasonable conduct of Defendant Conner, Plaintiff suffered the aforementioned severed and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma.

31. If Plaintiff prevails, she is entitled to be awarded attorney fees and costs pursuant to 42 U.S.C. Section 1988

WHEREFORE, Plaintiff prays for judgment against Defendant John Conner for compensatory damages in the amount of TEN MILLION DOLLARS punitive damages, plus the costs of this action, attorney fees, and such other relief as the Court deems fair and appropriate under the circumstances.

## COUNT II: EXCESSIVE FORCE COGNIZABLE UNDER U.S.C. SECTION 1983 AGAINST DEFENDANT THROCKMORTON

32. Plaintiff incorporates by reference as though fully set out herein paragraphs 1 through 31.

8

33. As a result of the training exercise, Plaintiff was unfairly and unjustifiably attacked by the officer Throckmorton.

34. As a result of the attack by Defendant Throckmorton, committed under color of law, Plaintiff suffered grievous bodily harm and was deprived of her right to be secure from unreasonable force in a training exercise all in violation of the 4th and 14th Amendments of the United States Constitution and 42 U.S.C. Section 1983.

35. As a direct and proximate result of the unreasonable conduct of Defendant Throckmorton, Plaintiff suffered the aforementioned severed and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma.

36. If Plaintiff prevails, she is entitled to be awarded attorney fees and costs pursuant to 42 U.S.C. Section 1988

WHEREFORE, Plaintiff prays for judgment against Defendant Throckmorton for compensatory damages in the amount of TEN MILLION DOLLARS punitive damages, plus the costs of this action, attorney fees, and such other relief as the Court deems fair and appropriate under the circumstances.

### COUNT III: EXCESSIVE FORCE COGNIZABLE UNDER U.S.C. SECTION 1983 AGAINST DEFENDANT THROCKMORTON

37. Plaintiff incorporates by reference as though fully set out herein paragraphs 1 through 36.

38. As a result of the training exercise, Plaintiff was unfairly and unjustifiably attacked by the officer Throckmorton by dragging her by her hair.

9

39. As a result of the attack by Defendant Throckmorton, committed under color of law, Plaintiff suffered grievous bodily harm and was deprived of her right to be secure from unreasonable force in a training exercise all in violation of the 4th and 14th Amendments of the United States Constitution and 42 U.S.C. Section 1983.

40. As a direct and proximate result of the unreasonable conduct of Defendant Throckmorton, Plaintiff suffered the aforementioned severed and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma.

41. If Plaintiff prevails, she is entitled to be awarded attorney fees and costs pursuant to 42 U.S.C. Section 1988

WHEREFORE, Plaintiff prays for judgment against Defendant Throckmorton for compensatory damages in the amount of TEN MILLION DOLLARS punitive damages, plus the costs of this action, attorney fees, and such other relief as the Court deems fair and appropriate under the circumstances.

### COUNT IV SUPERVISORY LIABILITY OF DEFENDANT BILL BROWN COGNIZABLE UNDER 42 U.S.C. §1983

42. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through 41.

43. Upon information and belief, Defendant Bill Brown was exhibiting erratic and abnormal behavior while training possible police officers at the police academy.

44. Upon information and belief, other females and officers complained about the intimidation and training practices of this officer. Several exercises were designed to not provide

instruction or assistance to officers and were merely designed to humiliate and intimidate women.

45. Defendant Brown's conduct of storming into a locker room of women who were not dressed was not acceptable. The command staff knew or should have known that the erratic and abnormal behavior of Defendant Brown required him to not be an instructor at the academy.

46. Defendant Board of Police Commissioners undertook a duty to supervise, monitor and control the actions of Defendant Brown.

47. Despite Defendant Brown's erratic and abnormal behavior, Defendant Board failed and neglected to remove him as an instructor.

48. Defendant Board breached its duties and was negligent including but not limited to:

   a. failing to disarm Defendant Brown and take all other steps necessary to remove all weapons from Defendant Brown so that he would not be a danger to the public including plaintiff;

   b. failing to take Defendant Brown to qualified medical health care professions so that his condition could be properly observed, evaluated and diagnosed and so that he could be placed in an environment so that he would not be a danger to himself and others;

   c. failing to supervise and control the actions of the Defendant Brown when it knew or had reason to know that he was a danger to himself and others.

49. The failure to supervise by Defendant Jan Doe was in violation of clearly established law.

50. Defendant Board's failure to supervise was not objectively reasonable. Defendant Brown is not entitled to qualified immunity.

11

51. As a result of Defendant Board's failure to supervise, it deprived Plaintiff of her right to be free from unlawful and unreasonable force in violation of the Fourth and Fourteenth Amendments of the constitution of the United States and remediable under 42 U.S.C. § 1983.

52. As a direct and proximate result of the unreasonable conduct of Defendant Brown, Plaintiff suffered the aforementioned severe and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, hospital bills, health care bills, doctor's bills, laboratory bills, prescription bills, physical therapy bills, lost wages, lost future wages, and will likely suffer such future injuries and damages including pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Defendant Jane Doe for compensatory damages in the amount of Ten Million Dollars ($10,000,000.00), plus the costs of this action, attorney's fees, and such other relief as the Court deems fair and appropriate under the circumstances.

### COUNT V FAILURE TO INSTRUCT, SUPERVISE, CONTROL, AND DISCIPLINE DIRECTED AGAINST THE BOARD OF POLICE COMMISSINOERS COGNIZABLE UNDER 42 U.S.C. § 1983

53. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through 52.

54. At all times relevant to this complaint, Defendants Brown, Throckmorton, Parker and Conner were employed as police officers of Kansas City Police Department, were acting under the direction and control of the Board of Police Commissioners ("Board"), who were responsible for making policy of the Kansas City Police Department, its officers and operations and Defendants John Doe and Jane Doe were acting pursuant to either official policy or the practice, custom, and usage of the Board.

12

55. Acting under the color of law, by through the policy makers of the Board and pursuant to official policy or custom and practice, the Board intentionally, knowingly and recklessly, or with deliberate indifference to the rights of the inhabitants of the City of Kansas City failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants Brown, Throckmorton, Parker and Conner, in the performance of their duties to refrain from:

    a. Unlawfully and unreasonably assaulting police academy trainees with using unreasonable and excessive force;

    b. Unlawfully using excessive physical force against female officers, including Plaintiff, which was different from the force used on male officers;

    c. failing to instruct or require officers to take safety measures so that female cadets cannot be targeted for hostile, demeaning, treatment in front of other cadets;

    d. failing to instruct or require officers to seek and obtain qualified medical care and treatment when a cadet is subjected to a deliberate assault from one of the training officersw; and

    e. otherwise depriving citizens of their constitutional and statutory rights, privileges and immunities.

56. The Board had knowledge of or, had it diligently exercised its duties to instruct, supervise, control and discipline on a containing basis, should had had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. Board had power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of Kansas City failed or refused to do so.

57. Board, directly or indirectly, under color of law, approved or ratified the unlawful and unreasonable conduct of defendants John Doe and Jane Doe.

13

58. There exists within the Kansas City, Missouri Police department policies or customs, practices and usages that are so persuasive that they constitute the policy of the Department, that are and were the moving force behind and thereby caused the constitutional deprivation of the Plaintiff's rights as has been more set forth herein. As a direct and proximate result of the unreasonable conduct of Defendant s Brown, Throckmorton, Conner and Parker, Plaintiff suffered the aforementioned severe and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, hospital bills, health care bills, doctor's bills, prescription bills, physical therapy bills, lost wages, lost future wages, and will likely suffer such future injuries and damages including pain and suffering and attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendant Board of Police Commissioners for compensatory damages in the amount of Ten Million Dollars ($10,000,000.00), plus the costs of this action, attorney's fees, and such other relief as the court deems fair and appropriate under the circumstances.

### COUNT VI: VIOLATION OF BODILY INTEGRITY BY DEFENDANT BROWN COGNIZABLE UNDER 42 USC 1983

59. Plaintiff incorporates by reference as though fully set out herein paragraphs 1 through 58.

60. As a result of the training exercise, Plaintiff was unfairly and unjustifiably attacked by the officer Throckmorton. After the attack went to the women's showers to recover and take a shower.

61. As a result of the attack by Defendant Throckmorton, Defendant Brown stormed into the women's shower and confronted Plaintiff and another officer. Brown's actions were committed under color of law, Plaintiff suffered grievous bodily harm and was deprived of her

14

right to be secure from unreasonable force in a training exercise all in violation of the 4th and 14th Amendments of the United States Constitution and 42 U.S.C. Section 1983.

62. As a direct and proximate result of the unreasonable conduct of Defendant Throckmorton, Plaintiff suffered the aforementioned severed and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma.

63. If Plaintiff prevails, she is entitled to be awarded attorney fees and costs pursuant to 42 U.S.C. Section 1988

WHEREFORE, Plaintiff prays for judgment against Defendant Throckmorton for compensatory damages in the amount of TEN MILLION DOLLARS punitive damages, plus the costs of this action, attorney fees, and such other relief as the Court deems fair and appropriate under the circumstances.

### COUNT VII: HOSTILE WORK ENVIRONMENT AGAINST DEFENDANT PARKER

64. Plaintiff incorporates by reference as though fully set out herein paragraphs 1 through 63.

65. As a result of the training exercise, Plaintiff was unfairly and unjustifiably treated by Defendant Parker. Defendant Parker worked to cause fear and apprehension in Plaintiff.

66. As a result. Parker's actions were committed under color of law, Plaintiff suffered grievous bodily harm and was deprived of her right to be secure from unreasonable force in a training exercise all in violation of the 4th and 14th Amendments of the United States Constitution and 42 U.S.C. Section 1983.

67. As a direct and proximate result of the unreasonable conduct of Defendant Throckmorton, Plaintiff suffered the aforementioned severed and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma.

68. If Plaintiff prevails, she is entitled to be awarded attorney fees and costs pursuant to 42 U.S.C. Section 1988

WHEREFORE, Plaintiff prays for judgment against Defendant Parker for compensatory damages in the amount of TEN MILLION DOLLARS punitive damages, plus the costs of this action, attorney fees, and such other relief as the Court deems fair and appropriate under the circumstances.

## **COUNT VIII FAILURE TO INSTRUCT, SUPERVISE, CONTROL, AND DISCIPLINE DIRECTED AGAINST CHIEF JIM CORWIN UNDER 42 U.S.C. § 1983**

69. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through 68.

70. At all times relevant to this complaint, Defendants Brown, Throckmorton, Parker and Conner were employed as police officers of Kansas City Police Department, were acting under the direction and control of the Chief of Police ("Corwin"), who was responsible for making policy of the Kansas City Police Department, its officers and operations and Defendants John Doe were acting pursuant to either official policy or the practice, custom, and usage of the Chief of Police.

71. Acting under the color of law, by through the policy makers of the Board and pursuant to official policy or custom and practice, the Board intentionally, knowingly and

16

recklessly, or with deliberate indifference to the rights of the inhabitants of the City of Kansas City failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants Brown, Throckmorton, Parker and Conner, in the performance of their duties to refrain from:

    a.    Unlawfully and unreasonably assaulting police academy trainees with unreasonable and excessive force;

    b.    Unlawfully treating female and male cadets and the police academy in a different manner and fashion;

    c.    Failing to instruct or require officers to properly instruct female cadets in a manner that is not abusive, demeaning, condescending, or belittling;

    d.    failing to instruct or require officers to seek and obtain qualified medical care and treatment when a fellow officer is attacked by another instructor; and

    e.    otherwise depriving citizens of their constitutional and statutory rights, privileges and immunities.

72. The Chief of Police at the time had knowledge of or, had he diligently exercised his duties to instruct, supervise, control and discipline on a containing basis, should had had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. The Chief had power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of Kansas City failed or refused to do so.

73. The Chief, directly or indirectly, under color of law, approved or ratified the unlawful and unreasonable conduct of defendants Connor, Throckmorton, Brown, and Parker.

17

74. There exists within the Kansas City, Missouri Police department policies or customs, practices and usages that are so persuasive that they constitute the policy of the Department, that are and were the moving force behind and thereby caused the constitutional deprivation of the Plaintiff's rights as has been more set forth herein. As a direct and proximate result of the unreasonable conduct of Defendant s Brown, Throckmorton, Conner and Parker, Plaintiff suffered the aforementioned severe and permanent injuries and damages, plus economic losses and damages including but not limited to medical bills, hospital bills, health care bills, doctor's bills, prescription bills, physical therapy bills, lost wages, lost future wages, and will likely suffer such future injuries and damages including pain and suffering and attorney fees.

WHEREFORE, Plaintiff prays for judgment against the Chief of Police for compensatory damages in the amount of Ten Million Dollars ($10,000,000.00), plus the costs of this action, attorney's fees, and such other relief as the court deems fair and appropriate under the circumstances.

**Jury trial demand on all counts.**

Respectfully Submitted,

*/s/ Brian J. Klopfenstein*
BRIAN J. KLOPFENSTEIN  #33722
305 Platte Clay Way, Suite C
Post Office Box 897
Kearney, MO  64060-0897
(816) 628-2800
(816) 628-2802 (FAX)
E-mail: bjkattorney@exop.net
ATTORNEY FOR PLAINTIFF

STATE OF MISSOURI       )
                        ) ss

COUNTY OF CLAY        )

       I, Crystal Henley, being first duly sworn, deposes and states that I have read the foregoing Complaint and the facts stated therein are true to the best of my knowledge and belief.

_____
CRYSTAL HENLEY

       Subscribed and sworn to before me, a Notary Public, this \_\_\_\_\_ day of October, 2010.

_____
Notary Public

My Commission Expires:

19