IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CRYSTAL HENLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-1009-CV-W-GAF |
| | ) |
| KANSAS CITY BOARD OF | ) |
| POLICE COMMISSIONERS, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Presently before the Court are Defendants Kansas City Board of Police Commissioners, Patrick McInerney, Alvin Brooks, Lisa Pelofsky, Angela Wasson-Hunt, and Mayor Mark Funkhouser, in their official capacity (collectively, the "Board"), Sargent Bill Brown ("Brown"), in his individual and official capacity, Officer Michael Throckmorton ("Throckmorton"), in his individual and official capacity, and Officer Dwight Parker's ("Parker"), in his individual and official capacity, Joint Motion to Dismiss Plaintiff Crystal Henley's ("Plaintiff") Second Amended Complaint (Doc. # 19) as against them for failure to state a claim for which relief can be granted pursuant to Fed R. Civ. P. 12(b)(6).[1] (Doc. # 20). Defendants assert, among other things, Plaintiff failed to exhaust administrative remedies pursuant to Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), or the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.* ("MHRA"), and therefore, cannot bring suit on her claims against Defendants and is now

---

[1] Hereinafter, the aforementioned defendants are collectively referred to as "Defendants."

1

time barred from bring such suit. (*See generally* Doc. # 20). Plaintiff opposes insisting her 42 U.S.C. § 1983 claims are timely. (Doc. # 25).

Specific to this Motion, Plaintiff alleges gender discrimination in public employment against Defendant Throckmorton; sexual harassment and violation of bodily integrity against Defendant Brown; and failure to instruct, supervise, control, and discipline causing a hostile work environment against Defendant Parker and the Board, all of which Plaintiff contends violated her rights pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.[2] (Second Amended Complaint, Counts II-VII). For the reasons set forth below, Defendants' Motion is GRANTED, and Plaintiff's claims against Defendants are DISMISSED.[3]

## DISCUSSION

**I.     FACTS**[4]

At all relevant times, Defendants Brown, Throckmorton, and Parker were employed as police officers of Kansas City Police Department ("KCPD"), and were acting under the direction and control of Chief of Police James Corwin and the Board.

In May 2005, Plaintiff enrolled in the Kansas City, Missouri, Police Academy ("Police Academy") training to become an officer for KCPD. The Police Academy is staffed and administered by members of KCPD, and is located in Kansas City, Jackson County, Missouri.

---

[2]Under Count VI, Plaintiff alleges "violation of bodily integrity" against Defendant Brown. (Complaint, ¶¶ 60-64). Plaintiff admits the labeling of the claim is "inartful," and insists the claim is one of "sexual discrimination/creation of hostile working environment." Because Count VI is a claim of gender discrimination and/or hostile working environment, the same analysis herein applies to said Count.

[3]Dismissal only applies to the claims and defendants of this Motion.

[4]Unless otherwise noted, all facts derive from Plaintiff's Second Amended Complaint.

Sometime in May 2005, an unnamed member of the Human Resources staff informed the incoming class of students that they must sign a contract and agree to pay KCPD a certain sum of money for the training if the persons enrolled in the Police Academy resigned after certification and before three (3) years of service. Additionally, Defendant Brown allegedly informed the class they had no rights and if "they challenged his authority[,] they would be dropped."

Plaintiff alleges she was targeted for discrimination because she was a female in a class that was predominantly male and was almost exclusively trained by males. Plaintiff further alleges throughout her entire training, from May to October 2005, she was treated differently and suffered humiliation, loss, physical injury, medical complications, and demeaning and intimidating conduct.

On or about late May or early June 2005, Defendant Throckmorton allegedly made Plaintiff conduct a "tactical recovery" exercise for thirty-five (35) to forty (40) minutes, resulting in a severely torn quad muscle in one (1) leg. Said injury caused Plaintiff to suffer leg convulsions, and a large knot in her leg, lasting for approximately three (3) days. No other male officers were required to perform the exercise in the same manner.

In June 2005, Defendant Parker spoke with the female cadets, including Plaintiff, regarding their chest size. Defendant Parker allegedly told Plaintiff her button down dress shirt puckered and that an individual could see her undergarments, which would be distracting and make it difficult for females to be taken seriously as police officers.

Later that month, Defendant Parker told Plaintiff he decided he would not permit Plaintiff to graduate and he had allegedly taken a bet to see how fast "they" could get rid of her. While Defendant Parker complimented Plaintiff on her work in the Police Academy, he indicated he would

3

try hard to assure she did not graduate. According to Plaintiff, Defendant Parker then suggested that she looked like she should be "some rich Johnson county man's wife rather than a police officer."

In July 2005, Defendant Throckmorton "wrote up" Plaintiff for not jumping high enough over a crack in the gym mat. During the training exercise, Defendant Throckmorton was "intently watching Plaintiff's chest as she jumped." The command to jump ran the entire session of the class, and allegedly Defendant Throckmorton continued watching Plaintiff at a very close distance. Afterwards, male class members told Plaintiff they could not have jumped as high as Plaintiff.

In August 2005, while at the Police Academy shooting range, Defendant Brown allegedly "ranted and raved" at Plaintiff. Defendant Brown screamed throughout the entire shooting range obstacle course. As a result, Officer Conroy stepped out of his office asking Defendant Brown to come to his office. At a later time, Plaintiff was allegedly kicked in the back for bad posture while she was doing pushups by Defendant Throckmorton. No male officers were kicked for bad posture by Defendant Throckmorton. In another occurrence, after failing to hold her leaning wall squat exercise, Defendant Throckmorton screamed at Plaintiff for being a "lazy quitter" in front of the class. Defendant Throckmorton did not scream at the thirty (30) males who quit the exercise before she did.

During the month of September 2005, Defendant Throckmorton made Plaintiff close her eyes in a "PT/DT" class. While Plaintiff's eyes were closed, Defendant Throckmorton allegedly administered a brachial hit that dislocated her shoulder, which had to be place backed in the socket by a chiropractor following class that day. At the time of the alleged brachial hit, Plaintiff did not show any pain, resulting in Defendant Throckmorton threatening to hit her again.

4

During various training exercises, Plaintiff experienced blame for a failed or flawed training exercise when it may have been a male partner's fault. According to Plaintiff, the training experience was made much worse by Defendant Brown when he informed Plaintiff's partners, including E.O. Grigsby to "work against Plaintiff on the individual calls." In another event, Plaintiff was ridiculed and screamed at when she made an extra turn while conducting a driving exercise. Contrarily, a female instructor, Nicole Templeton, was encouraging of male officers.

In October 2005, Plaintiff, along with Defendant Throckmorton and one Officer Jackson, discussed how much easier it was for women with large chests to do pushups. Seemingly, on another occasion, Defendant Throckmorton was not satisfied with Plaintiff's effort during an exercise, and he pulled Plaintiff by her hair from a "sit-up" position because her hands were improperly clasped. On another occasion, Plaintiff, apparently sick, was sent home by Defendant Brown for having a raspy voice. The following day, Defendant Brown required some type of proof she was sick. Plaintiff was "written up" by both Defendants Brown and Parker for staying home sick. The next day, Defendant Throckmorton called Plaintiff a "chicken" in front of the class.

On October 17, 2005, Defendant Parker instructed another officer to lock the gun cabinet early, preventing Plaintiff from participating in an exercise. When instructed by Defendant Throckmorton to contact Defendant Brown, Defendant Brown "immediately began screaming that Plaintiff had a loaded weapon and had gone crazy." Defendant Brown's screaming was in front of another incoming class, causing Plaintiff embarrassment and humiliation.

Later that month, Defendant Throckmorton, as an alleged part of training, pepper sprayed Plaintiff's face. The pressure was so high when Throckmorton got closer to Plaintiff, the pressure caused her right eye to open and damaged her eye. Plaintiff left the exercise and went to the

5

women's locker room to shower off. As she and another female officer came out of the showers, Defendant Brown came into the women's locker room leaving the door open, which allowed other male officers to see into the locker room. While Defendant Brown was in the women's locker room, he observed Plaintiff and the other female officer naked. Plaintiff complained about eye pain to Defendant Brown, Defendant Parker, and Officer Pallet. Later that day Plaintiff went to the emergency room.

Additionally, in October 2005, Plaintiff participated in a training exercise learning how to apply a type of choke hold to restrain an attacking party. Plaintiff was chosen to be the attackee in a simulated attacked. Plaintiff held the simulated attacker in a choke hold. After releasing the hold, the simulated attacker physically assaulted Plaintiff. The attack by this officer, allegedly "John Conner," required four (4) officers, Conroy, Jackson, Huth, and Defendant Throckmorton, to pull Conner off of Plaintiff. Plaintiff attempted to report the incident; however, according to Plaintiff, command staff did not listen. Plaintiff believes several members of the KCPD command staff were aware of the instructors' conduct but took no action.

On November 8, 2005, Defendants Parker and Brown provided a memorandum to Plaintiff explaining why Plaintiff should not graduate from the Police Academy. According to Plaintiff, she was subsequently forced to leave the Policy Academy, and, therefore, could not become a KCPD police officer. Plaintiff never filed any charges with the EEOC or the MHRA Commission concerning Defendants' alleged unlawful employment practices. (*See generally* Doc. # 25).

Plaintiff now seeks compensatory and punitive damages against Defendants for "severe and permanent injuries and damages, plus economic losses and damages including[,] but not limited to[,]

medical bills, health care bills, doctor bills, lost wages, lost future wages, pain and suffering, and psychological trauma."

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a cause of action for failure to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion to dismiss, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations are not required." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949-50 (citations and quotations omitted). A Rule 12(b)(6) motion should be granted only if the plaintiff fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the plaintiff to the relief requested. *Twombly*, 550 U.S. at 570 (abdicating the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999).

## III. ANALYSIS

### 1. Title VII and § 1983 Claims[5]

---

[5] As discussed herein, Plaintiff's claims against Defendants are Title VII substantive rights, requiring Plaintiff to follow Title VII administrative requirements. Plaintiff failed to follow said requirements, therefore, she cannot bring these claims before this Court because the Court does not have jurisdiction over these claims. Without proper jurisdiction over Plaintiff's Title VII claims, the Court cannot have supplemental jurisdiction over MHRA claims. Accordingly, the Court only analyzes Title VII in this Order.

7

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393-94 (1989) (internal quotations and citation omitted). Analysis of a § 1983 claim begins with the precise alleged constitutional violation. *Id.* at 394; *see Baker*, 443 U.S. at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). Ostensibly, Plaintiff brings her § 1983 claims under the Equal Protection Clause of the Fourteenth Amendment. (*See generally* Second Amended Complaint). Equal Protection claims may be asserted under § 1983. *See, e.g., Mercer v. City of Cedar Rapids*, 308 F.3d 840, 844 (8th Cir. 2002). The "right to be free from gender discrimination is secured by the [E]qual [P]rotection [C]lause of the Fourteenth Amendment." *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007) (citing *United States v. Virginia*, 518 U.S. 515, 532 (1996)). "Sexual harassment by state actors violate[s] the Fourteenth Amendment and establishes a [§] 1983 action," and the harassment must be "sufficiently severe or pervasive to create an objectively hostile work environment" and "subjectively perceived by the plaintiff as abusive." *Wright v. Rolette Co.* 417 F.3d 879, 884-85 (8th Cir. 2005) (quotations and citation omitted);

However, where Title VII creates a substantive right, claims asserting violations of such rights are subject to Title VII administrative requirements. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011) ("[E]xhaustion applies equally to discrimination claims brought under § 1983."); *Foster v. Wyrick*, 823 F.2d 218, 220-22 (8th Cir. 1987). To ensure effectiveness and uphold Congressional intent, a right created by Title VII cannot be the basis for a cause of action under § 1983. *See Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979)*; see see also Foster*, 823 F.2d at 221-22 (concluding a Title VII claim may not be asserted in a § 1983

action). "Congress' express intent that plaintiffs seek voluntary conciliation of their Title VII claims would be frustrated if a plaintiff, after failing to file such a complaint, could bring the same claim in federal court under § 1983." *Foster*, 823 F.2d at 222.

Title VII creates substantive rights protecting individuals from gender discrimination, sexual harassment, and a hostile working environment. "Title VII has made an employer's discrimination against an employee on the basis of sex an unlawful employment practice." *Tipler*, 482 F.3d at 1025 (internal quotations and citation omitted); 42 U.S.C. § 2000e-2(a). "Harassment on the basis of sex is a violation of [§] 703 of [T]itle VII." 29 C.F.R. § 1604.11. Moreover, Title VII protects against a hostile working environment based on sexual harassment. Title VII's prohibition of discrimination in employment on the basis of sex, includes sexual harassment, "which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Sheriff v. Midwest Health Partners*, *P.C.*, 619 F.3d 923 (8th Cir. 2010) (quoting and citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986); 42 U.S.C. § 2000c-2(a); *see also Wright*, 417 F.3d at 886 ("[V]erbal harassment of a sexual nature which creates an offensive working environment fits [29 C.F.R. § 1604.11's] definition of sexual harassment.").

Plaintiff's claims as against Defendants may be prohibited by the Equal Protection Clause, but they are also prohibited by Title VII. These claims do not involve "independent" rights, meaning Plaintiff cannot circumvent Title VII requirements by only pleading violations of the Equal Protection Clause under § 1983. *See Novotny*, 442 U.S. 366 at 378; *Foster*, 823 F.2d at 221-22. Accordingly, to be able to bring her claims of gender discrimination, sexual harassment, and hostile working environment before federal court, Plaintiff must have exhausted the requisite administrative

9

remedies under Title VII. To hold otherwise would permit Plaintiff to obviate express Congressional intent.

**2.      Title VII Statute of Limitations**

Lastly, Title VII contains a statute of limitations prescribing the amount of time a plaintiff has to file a charge with the EEOC, and subsequently file suit in federal court. A plaintiff has one hundred and eighty (180) days after an alleged unlawful employment practice occurred to file an EEOC charge. 42. U.S. C. § 2000e-5(e)(1). A plaintiff then must file suit within ninety (90) days of receiving an EEOC's right-to-sue letter or within one hundred and eighty (180) days from the filing of the EEOC charge, whichever is later. § 2000e-5(f)(1). The unlawful employment practices Plaintiff alleges against Defendants occurred between May 2005 and November 2005. Plaintiff failed to timely file an EEOC charge. Therefore, Plaintiff failed to exhaust Title VII administrative remedies, and her claims against Defendants are now time barred.

## CONCLUSION

Even taking Plaintiff's allegations as true, Plaintiff has failed to state a claim for which relief can be granted. Although some discrimination claims may be brought pursuant to the Equal Protection Clause under § 1983, where Title VII creates substantive rights to the relief pled, Plaintiff must bring her claims under Title VII and exhaust Title VII administrative remedies to seek vindication. Plaintiff failed to exhaust Title VII administrative remedies for her claims against Defendants, and therefore, cannot bring these claims before this Court. Further, Plaintiff is now time barred by Title VII from further pursuing these claims. Accordingly, Defendants' Motion is GRANTED, and Plaintiff's claims against Defendants are DISMISSED.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: April 29, 2011